IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROSE M. BYRD,

        Plaintiff,

vs.                                     Case No. 13-cv-714

WISCONSIN DEPARTMENT
OF VETERANS AFFAIRS,

        Defendant.

## COMPLAINT

The Plaintiff, Rose M. Byrd, by her attorneys Arellano & Phebus, S.C., alleges as follows:

### NATURE OF THE CASE

1. This action is brought by the plaintiff, pursuant to the Civil Rights Act of 1964 (as amended in 1991), 42 U.S.C. § 2000 et seq. (Title VII), and alleges quid-pro-quo, sexual harassment, hostile work environment, and retaliation for complaining of sexual harassment by termination. Plaintiff seeks injunctive relief, compensatory damages, damages for emotional injury due to the humiliating and discriminatory work conditions, punitive damages, and attorney's fees and costs.

### JURISDICTION AND VENUE

2. The United States District Court for the Western District of Wisconsin has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331.

3. Venue is vested upon this court because all acts alleged hereto occurred within the jurisdiction of the Western District of Wisconsin.

4. All of the prerequisites of Title VII have been met. A "Right to Sue" letter has been obtained pursuant to 42 U.S.C. § 2000 et seq.

**PARTIES**

5. Plaintiff Rose M. Byrd is a U.S. citizen, and an adult resident of the State of Wisconsin whose address P.O. Box 2602035, Madison, Wisconsin 53726. At all times material hereto, Byrd was employed by the Defendant.

6. Defendant the Wisconsin Department of Veteran's Affairs (hereinafter "WDVA") is an agency of the State of Wisconsin with its headquarters located at 201 West Washington Ave., Madison, Wisconsin 53707. At all times material hereto, WDVA was an employer under 42 U.S.C§ 2000e(i).

**FACTUAL ALLEGATIONS**

7. On October 12, 2012, Byrd commenced employment with the WDVA Division of Veteran's Services State Approving Agency as an Operation Plans Associate, a limited term position that was guaranteed for at least six months and the possibility of becoming a permanent position.

8. Byrd's immediate supervisor was Roger Boeker, who reported to Chris Schuldes, the Acting Director of the State Approving Agency.

9. Byrd's desk was located immediately behind Boeker's desk in an area separated from other employees.

10. As Boeker was training Byrd in October 2010, he sat close to her and placed his arm next to her arm and on at least three occasions intentionally rubbed his arm against her arm in a sexually suggestive manner.

11. Byrd immediately complained to Schulde that Boeker was harassing her and requested that the training take place in a conference room where she would be separated from Boeker.

12. Schulde agreed to move the training to a conference room.

13. In October 2010, Boeker occasionally would get up from his desk and reach for files located above Byrd's desk. As he was doing so, he would deliberately rub his crotch against Byrd's shoulder and place his buttocks near her face in a sexually suggestive manner. He repeatedly engaged in this conduct over the first few weeks of Byrd's employment.

14. Byrd examined the contents of the file cabinets that Schulde was accessing as he was engaging in this behavior and determined that none of the contents were relevant to performing any job duties and removed the files from her work area.

15. Boeker again immediately complained to Schulde that Boeker was harassing her and requested that her desk be moved to an area separated from Boeker in another room.

16. Schulde agreed to allow Byrd to move her desk.

17. After this conversation, Byrd complained of Boeker's harassment to Joesph Bertalan, who interviewed her for her position and had previously held Schulde's position.

18. About one week later, Byrd discovered that the location of her new desk had been changed from the separate room from Boeker that Schulde initially promised to a cubicle approximately twenty feet from Boeker's desk.

19. After she moved to her new desk, Boeker entered Byrd's cubicle to secure a folder and again rubbed his crotch area against Byrd's shoulder in a sexually suggestive manner.

20. Byrd immediately removed all files from her desk area and notified Boeker she had done so and that it would no longer be necessary for him to enter her cubicle.

21. On nearly a daily basis, Boeker remarked to Byrd about the perfume she was wearing in a sexually suggestive manner.

22. Byrd did not wear any perfume when Boeker made these comments.

23. On one occasion, Boeker told Byrd to follow her down a hallway away from other employees because he had to show her something she needed to perform her job.

24. After they reached the end of the hallway, Boeker told Byrd how much he liked the smell of her perfume.

25. Byrd was not wearing any perfume at the time Boeker made this comment.

26. Byrd immediately sent an email to Boeker, with copies to Schulde and Beteralan, asserting that Boeker's comments about her perfume were inappropriate.

27. On November 1, 2010, Schulde informed Byrd she was being terminated but did not provide her with a reason why.

28. Defendant's conduct set forth above in paragraphs 1-27 constitutes a form of quid-pro-quo sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2(a).

29. Defendant's conduct set forth above in paragraphs 1-27 constitutes a hostile work place harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2(a).

30. Defendant's conduct set forth above in paragraphs 1-27 constitutes retaliation for opposing discriminatory activities in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964. 42 U.S.C. 2000e-3(a).

31. As a direct and proximate result of the WDVA's conduct, Byrd has lost wages and benefits, has suffered mental assault resulting in physical and mental pain and suffering, has been humiliated, embarrassed and otherwise mentally and physically degraded.

WHEREFORE, Plaintiff demands the following:

a. To be made whole for all lost wages and benefits resulting from her termination;

b. Compensatory damages for emotional injury, distress, and physical pain and suffering;

c. An injunction against Defendant ordering that it cease and desist the retaliatory practices towards Byrd;

d. Punitive damages;

e. Reasonable attorney's fees and costs and any other relief the court may deem just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Dated this October 14, 2013.

ARELLANO & PHEBUS, S.C.
Attorneys for Plaintiff

 /s/Douglas J. Phebus
Douglas J. Phebus
State Bar No: 1029524
dphebus@aplawoffice.com
Kurt C. Kobelt
State Bar No.: 1019317
kkobelt@aplawoffice.com
1468 North High Point Road, Suite 202
Middleton, WI 53562-3683
Telephone: 608.827.7680